WESTMORELAND INTERMEDIATE UNIT # 7, Appellant

v.

WESTMORELAND INTERMEDIATE UNIT # 7 CLASSROOM ASSISTANTS EDUCATIONAL SUPPORT PERSONNEL ASSOCIATION, PSEA–NEA.

Commonwealth Court of Pennsylvania.

Argued April 15, 2013.

Decided June 20, 2013.

John M. Ranker, Greensburg, for appellant.

Richard S. McEwen, Edinboro, for appellee.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

This matter is before the Court on remand from the Pennsylvania Supreme Court for reconsideration on the basis of the Supreme Court's decision in *Philadel-* *phia Housing Authority v. American Federation of State, County and Municipal Employees,* —— Pa. ——, 52 A.3d 1117 (2012).

### History

Sherie Vrable (Grievant) was employed at Westmoreland Intermediate Unit # 7 (Employer) as an elementary school classroom assistant. She was responsible for working on a one-to-one basis or in small groups with eleven emotionally disturbed children. She also assisted in general administrative duties, and escorted children to the restroom, lunch, recess and to and from the buses.

On March 18, 2002, Grievant was found unconscious in the school's restroom as the result of a drug overdose. The evidence established that Grievant was wearing a 100 mcg (microgram) Fentanyl patch[1] on her back while she was performing her duties as a classroom assistant in grades three through five. Grievant obtained the Fentanyl patch from a friend. It was not prescribed to her by a physician. The evidence established that Grievant wore the patch because it was "a temptation." Monongahela Valley Hospital Emergency Room Records, March 20, 2002, at 1; Reproduced Record (R.R.) at 90a.

By letter dated September 17, 2002, Employer notified Grievant that it intended to terminate her employment due to her "possession and use of a controlled substance, not prescribed to [her], in the workplace during working hours at the West Newton Elementary School." Letter to Sherie L. Vrable, from Westmoreland

---

1. Fentanyl, a narcotic (opioid) analgesic, is a Schedule II controlled substance under Section 4 of The Controlled Substance, Drug, Device and Cosmetic Act (CSDDCA), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780–104. Under Section 113 of the CSDDCA, it is a misdemeanor for a person to possess a Schedule II controlled substance without a valid prescription. 35 P.S. § 780–113. According to the National Drug Intelligence Center, Fentanyl is approximately 50 times more potent than heroin and 50–100 times more potent than morphine. National Drug Intelligence Center, Fentanyl Situation Report, June 5, 2006.

Intermediate Unit, September 17, 2002, at 1.[2]

Grievant, through Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association (Union), challenged the termination through grievance arbitration.

The Arbitrator sustained the grievance and found Employer lacked "just cause [3]" to terminate Grievant because her conduct did not rise to the level of "immorality" under Section 1122(a) of the Public School Code of 1949[4]:

"The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be *immorality*, incompetency, unsatisfactory teaching performance, ... intemperance, cruelty, persistent negligence in the performance of duties, willful neglect of duties, physical or mental disability...." (emphasis added).

The Arbitrator's conclusion was based on the finding that Grievant had an unblemished 23–year tenure with the Intermediate Unit. He concluded that this single error of judgment did not amount to such a grievous offense that it would offend the morals of the community. Recognizing the gravity of Grievant's conduct, however, the Arbitrator imposed certain conditions involving rehabilitation that Grievant was required to meet in order to be reinstated. Grievant had to participate in a drug and alcohol treatment program, abstain from mood altering drugs, or chemical substances while on duty, submit to drug/alcohol screenings, and participate in counseling and a treatment program.

The trial court vacated the Arbitrator's award and reinstated Grievant's discharge. It determined that the Arbitrator's award fell within the "core functions" exception to the essence test because Grievant's use of controlled substances while caring for children directly affected Employer's ability to perform its function of providing a safe environment for its students. Trial Court Opinion, August 3, 2004, at 10. The Union appealed.

### First Remand

This Court upheld the trial court's application of the "core functions" test and concluded that Employer satisfied the elements necessary to establish the offense of immorality as defined in the School Code. The Supreme Court granted the Union's petition for allowance of appeal to review whether the "core functions" exception was inconsistent with the essence test. Concluding that the "core functions" exception was "insufficiently precise" the Supreme Court replaced it with the public policy exception.

The Supreme Court remanded this case to the trial court to apply the newly recognized "public policy" exception to the essence test. On remand, the trial court held that the Arbitrator's decision to reinstate Grievant did *not* violate the well-defined dominant public policy of protecting children in school from the dangers of illicit drugs and drug use. The trial court reasoned that the numerous conditions of reinstatement imposed by the Arbitrator satisfied this policy and held "[w]ith the imposition of these safeguards, the arbitrator has reinforced the public policy of protecting students from the dangers of

2. This letter was contained in the certified record, but not in the Reproduced Record.

3. Appendix C, Section 9(b) of the Collective Bargaining Agreement (CBA) provided that "employer shall have the right to discipline or

discharge for just cause." CBA, October 24, 2000, at 26; Reproduced Record (R.R.) at 33a.

4. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1122(a).

drug use." Trial Court Opinion, August 6, 2008, at 6. Employer appealed.

On appeal, this Court reversed. It concluded that Grievant's immediate reinstatement to the classroom while she attempted rehabilitation violated public policy.

### Second Remand

The Union petitioned for allowance of appeal, which the Supreme Court "reserved" pending its decision in *Philadelphia Housing*. On August 21, 2012, an opinion in *Philadelphia Housing* was entered, and on November 27, 2012, the Supreme Court denied the Union's petition for allowance of appeal.

The Union filed a motion to reconsider. The Supreme Court granted that and vacated this Court's order, and remanded to this Court for reconsideration on the basis of *Philadelphia Housing*.

The matter is now before this Court on remand from the Supreme Court with direction to reconsider our decision in light of the Supreme Court's decision in *Philadelphia Housing*.

In *Philadelphia Housing*, Philadelphia Housing Authority (PHA) fired Thomas Mitchell (Mitchell) because he violated the sexual harassment policy. A co-worker had complained that Mitchell went into a changing room while she was changing and on another occasion he ground his penis into her for approximately fifteen seconds. He also told her that he wanted to have sex.

American Federation of State, County and Municipal Employees, District Council 33, Local 934 (union) filed a grievance on Mitchell's behalf and alleged that PHA violated the parties' collective bargaining agreement (CBA), which provided, that an employee may be terminated only for "just cause." Arbitration hearings were conducted. The Arbitrator credited the testimony of the complainant and characterized Mitchell's behavior as "lewd, lascivious and extraordinarily perverse." *Philadelphia Housing*, —— Pa. at ——, 52 A.3d at 1119. Despite these findings, the Arbitrator determined that PHA did not establish just cause to terminate Mitchell because management knew of and condoned horseplay of a sexual nature, and, prior to Mitchell's discharge, the only action taken in terms of counseling or disciplining him was a warning.

The Arbitrator sustained Mitchell's grievance and reinstated him with back pay. PHA filed a petition to vacate the award which the trial court denied. On further appeal, this Court held that the PHA's legal obligation to protect its employees from sexual harassment in the workplace constituted a "core function" of the agency that PHA could not bargain away. This Court reversed the trial court based on the core functions test. The union petitioned for allowance of appeal. The Supreme Court granted the union's petition, vacated this Court's order and remanded with instructions to reconsider PHA's petition to vacate in light of the new "essence test" espoused in *Westmoreland Intermediate Unit No. 7 v. Westmoreland Intermediate Unit No. 7. Classroom Assistants Educ. Support Personnel Association*, 595 Pa. 648, 939 A.2d 855 (2007).

On remand, this Court again reversed the trial court and vacated the arbitration award.

Recognizing that there is an explicit, well-defined, and dominant public policy against sexual harassment in the workplace, the Supreme Court affirmed and held the arbitrator's interpretation of the CBA and his reinstatement of Mitchell without conditions so undermined public policy that the award could not be upheld.

To allow an arbitration award which finds that an employee engaged in 'extraordinarily perverse' physical sexual harassment of a co-worker, yet then simply dismisses the conduct as unworthy of an employer response beyond initial 'counseling' and reinstatement with back pay, would eviscerate the ability of employers to enforce dominant public policy.

*Philadelphia Housing,* —— Pa. at ——, 52 A.3d at 1125.

The Supreme Court found that the arbitrator's award "betray[ed] a lack of appreciation for the dominant public policy." *Philadelphia Housing,* —— Pa. at ——, 52 A.3d at 1128. The Supreme Court found that a public employer "must be able to do more than engage in adjectival condemnation when faced with this sort of employee misconduct." *Id.*

Considering the decision in *Philadelphia Housing* this Court must conclude that the Arbitrator's award of reinstatement, even with the conditions imposed, would violate the public policy of this Commonwealth. As noted above, the public policy of educating our children about the dangers of illicit drugs and drug abuse and protecting children from exposure to drugs and drug abuse is compelling.

The Arbitrator clearly recognized Grievant had an ongoing drug problem as set forth in the medical records because he required that she participate in a drug and alcohol counseling and treatment program, abstain from mood altering drugs, or chemical substances while on duty, and submit to drug/alcohol screenings. As Employer points out, to reinstate an employee who attended work while under the influence, while charged with the duty of overseeing young children, with the hope that she will overcome her addiction, defies logic and violates public policy. The award essentially would allow Grievant to be placed back into the classroom pending her attempts at recovery. Simply put, an elementary classroom is no place for a recovering addict. The Arbitrator's award demonstrated a tolerance, rather than intolerance for illicit drug use, and is in direct contravention of public policy. Grievant's immediate reinstatement to the classroom while she attempted rehabilitation "eviscerated" Employer's ability to enforce this dominant public policy.

Accordingly, this Court must conclude that the Arbitrator's award violated a well-defined, dominant public policy to protect school children from illegal drugs and drug use. It must not be enforced.

The order of the trial court is reversed, and the Arbitrator's award is vacated as being in violation of public policy.

### ORDER

AND NOW, this 20th day of June, 2013, the order of the Court of Common Pleas of Westmoreland County in the above-captioned case is hereby reversed and the Arbitrator's award is vacated as being against public policy.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. Based on the Supreme Court's decision in *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees,* —— Pa. ——, 52 A.3d 1117 (2012), I would conclude that the Arbitrator's award conditionally reinstating Sherie Vrable (Grievant), who engaged in a single error in judgment, does not violate public policy.

Initially, I note that the Supreme Court has already concluded "that the arbitrator's award was rationally derived from the agreement, and thus, under the essence test, must be upheld." *Westmore-*

land Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, 595 Pa. 648, 667, 939 A.2d 855, 866 (2007) (*Westmoreland I*). The Court further stated that the essence test is subject to a narrow exception whereby an award will be vacated if it violates a public policy of this Commonwealth. *Id.* at 665, 939 A.2d at 865. Thus, the Court remanded this case for the purpose of determining whether Grievant's "reinstatement contravenes a well-defined, dominant public policy that is ascertained by reference to the laws and legal precedents and not from mere general considerations of supposed public interests." *Id.* at 667, 939 A.2d at 867. Subsequently, the Court ordered that *Philadelphia Housing*, be considered on remand. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association,* —— Pa. ——, 66 A.3d 250 (2013) (*per curiam*).

Here, the issue is not whether Grievant's conduct of wearing a Fentanyl patch not prescribed to her violates public policy, but whether the award reinstating Grievant violates public policy. *See Shamokin Area School District v. American Federation of State, County, and Municipal Employees District Council 86,* 20 A.3d 579, 582 (Pa.Cmwlth.2011). Thus, we must look to the Arbitrator's award in determining whether Grievant's reinstatement violates public policy. *Id.*

The Supreme Court summarized the Arbitrator's award as follows:

Arbitrator Newman determined that Ms. Vrable was not entitled to any back pay and made her reinstatement strictly conditional. Reinstatement was conditioned upon: (1) satisfactory completion of the terms and conditions of her one-year probation period and (2) her participation in a Drug and Alcohol Treatment Program and her agreement to be bound by its conditions. Ms. Vrable was to abstain from all mood-altering drugs or chemical substances while on-duty for the school year. Moreover, at the Intermediate Unit's discretion, Ms. Vrable was to be subject to periodic, unannounced drug/alcohol screening and a positive result would result in immediate removal. Furthermore, Ms. Vrable was required to participate in a counseling and treatment program and to consent to release information to the Intermediate Unit to allow reports of Ms. Vrable's attendance at and progress in the monitored program. Any breach of the arbitration award would result in Ms. Vrable's immediate dismissal for violation of this "last chance" agreement.

*Westmoreland I,* 595 Pa. at 655–56, 939 A.2d at 859–60.

I agree with the majority that protecting our children from the dangers of drugs is a dominant public policy. I disagree with the majority's determination, however, that the Arbitrator's award contravenes the public policy of protecting our children from the dangers of drugs.

The majority states that "[t]he Arbitrator clearly recognized Grievant had an ongoing drug problem as set forth in the medical records because he required that she participate in a drug and alcohol counseling and treatment program, abstain from mood altering drugs, or chemical substances while on duty, and submit to drug/alcohol screenings." (Majority's Op. at 759.) The majority concludes that "[s]imply put, an elementary classroom is no place for a recovering addict." (*Id.* at 759.)

Contrary to the majority's characterization, the Arbitrator did not label Grievant an "addict," nor did he find that Grievant "had an ongoing drug problem." In fact,

the Arbitrator specifically found that this was "one and only one workplace incident" and "one such incident ... would not be a course of conduct." (Arbitrator's Award at 7.) The Arbitrator, noting Grievant's unblemished, 23–year tenure, characterized Grievant's behavior as foolish, irresponsible, and stupid, but not immoral. (*Id.*) "[A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

The Arbitrator, recognizing that Grievant was amenable to discipline, conditionally reinstated her without back pay. The Arbitrator imposed numerous conditions to protect the children and to ensure that Grievant did not repeat her single act of drug-related misconduct. Importantly, the Intermediate Unit can require Grievant to submit to unannounced drug and alcohol testing and immediately dismiss Grievant for a positive result or for any other violation of the award. The Arbitrator's award, which severely conditions Grievant's reinstatement and bestows upon the Intermediate Unit unfettered oversight, does not violate the public policy of protecting our children from drugs.

Moreover, the facts here are distinguishable from *Philadelphia Housing* wherein Thomas Mitchell committed multiple acts of sexual harassment while employed with the Philadelphia Housing Authority (PHA). In addition to sexual comments, Mitchell engaged in unwanted physical contact with a female co-worker. The arbitrator characterized his conduct as " 'lewd, lascivious, extraordinarily perverse' " and " 'unacceptable' " sexual harassment against his female co-worker. —— Pa. at ——, 52 A.3d at 1119 (quoting Arbitrator's Award.). The arbitrator also concluded that Mitchell did not take responsibility for his conduct. *Id.* at ——, 52 A.3d at 1125. Despite these findings, the arbitrator reinstated Mitchell with back pay.

The Supreme Court determined that requiring PHA to reinstate Mitchell with full back pay and without any sanctions would violate a dominant and well-defined public policy against sexual harassment at work. *Id.* at ——, 52 A.3d at 1128. "The award in this case encourages individuals who are so inclined to feel free to misbehave in egregious ways, without fear of any meaningful consequence." *Id.*

In this case, contrary to *Philadelphia Housing,* Grievant committed a single error in judgment, not multiple egregious acts. Grievant also admitted to and accepted responsibility for her action. Moreover, the Arbitrator's award imposes sanctions, including the loss of pay, and mandates her participation in various counseling programs. Finally, Grievant's failure to comply with any condition of the award will result in her immediate dismissal. Thus, unlike *Philadelphia Housing,* the award here recognizes Grievant's misconduct, penalizes Grievant, and imposes conditions on her reinstatement. This award does not, by any means, encourage individuals to engage in illicit drug activity without fear of meaningful consequence.

The majority, in vacating the arbitrator's award, states that reinstating Grievant would violate "the public policy of educating our children about the dangers of illicit drugs and drug abuse and protecting children from exposure to drugs and drug abuse is compelling." (Majority Op. at 759.) I agree that the policy of protecting our children from the dangers of drugs is compelling. Nonetheless, I would conclude that the Arbitrator's award, which conditionally reinstates a one-time offender while imposing numerous safeguards, does not violate this public policy. Rather,

the Arbitrator's award is designed to punish Grievant and ensure the continued protection of our children.

Accordingly, I would affirm the trial court.