# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neshaminy School District       :
      :
      v.       :    No. 410 C.D. 2016
      :    Argued: May 3, 2017
Neshaminy Federation of Teachers,    :
              Appellant    :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge[1]
                  HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: September 18, 2017**

Before this Court is the appeal of the Neshaminy Federation of Teachers (Union) from an Order of the Court of Common Pleas of Bucks County (common pleas) vacating the grievance arbitration award (Award) that reinstated Jared Katz (Katz) to his position as a ninth grade teacher, imposed upon him a 20-day suspension without pay, and authorized the Neshaminy School District (District) to require Katz to attend reasonable sexual harassment training. On appeal, Union argues that common pleas erred in vacating the Award based on the court's conclusion that the Award violated the dominant public policy against sexual

---

[1] This case was decided before Judge Hearthway's service on the Court ended on September 1, 2017.

harassment. After reviewing the circumstances of this case and the arbitrator's factual findings, we discern no error in this conclusion and, therefore, affirm.

## I. Background

Union and District were parties to a Collective Bargaining Agreement (CBA) with a term that ran from July 1, 2008, through June 30, 2015. Article IV, Section 4.2 of the CBA provided, in relevant part, that an employee may not be dismissed without just cause. (R.R. at 11a.) The CBA contained a grievance and arbitration procedure that provided for final and binding arbitration. District implemented several policies that concerned discipline. Policy 327 requires the application of progressive discipline with an exception for a "singular major violation." (*Id.* at 338a.) Policies 347 and 348 address "Discrimination and Harassment" and "Sexual Harassment," respectively. (*Id.* at 332a-37a.)

Katz has worked for the District for approximately 10 years and has served as an advocate for Union. In a Statement of Charges and Notice of Hearing, District notified Katz that its Superintendent was recommending his dismissal for "creat[ing] a hostile work environment for [his] fellow teachers" and "making lewd and suggestive statements to students." (*Id.* at 66a-67a.) Following a meeting of District's School Board, Katz's employment with the District was terminated by letter dated April 9, 2014. A grievance was filed pursuant to the CBA's grievance and arbitration procedures. Arbitration hearings were held on December 3, 2014, December 9, 2014, and February 26, 2015, before arbitrator Ralph H. Colflesh, Jr., Esq. (Arbitrator).

In his May 25, 2015 decision, Arbitrator addressed, relevant here, Katz's behavior toward his co-teacher[2] (Co-teacher). Co-teacher testified that Katz directed sarcastic and sexually explicit comments toward her "all day, every day," which made her uncomfortable. (Hr'g Tr. at 116-17, 122, R.R. at 100a, 102a.) In particular, Co-teacher recalled when Katz: "invited [her] to sit on his lap in lieu of a chair"; "told her it was taking all of his self-control not to kiss her"; and responded "[s]o, I shouldn't slap your a[**]" when Co-teacher specifically asked him to stop his behavior "because their 9th grade students were starting to comment about a possible relationship between the two." (Award at 23.) Co-teacher characterized Katz's behavior as being "so continuous that she . . . consider[ed his comments] as white noise or mere background to her work environment." (*Id.*) Co-teacher explained that she "felt helpless and did not complain because she was new on the job and had to rely on [] Katz for subject matter content for which she was unfamiliar" and, therefore, had "to laugh off his commentary" because she "wanted a job." (Hr'g Tr. at 127, R.R. at 103a; Award at 23.)

Arbitrator found Co-teacher's "testimony as compelling, sincere, and credible as it was anguished." (Award at 23.) He concluded Katz's conduct violated Policy 348, which was necessarily a violation of Policy 347, and Section 235.11(3) of Pennsylvania's Code of Professional Practice and Conduct for Educators (Professional Conduct Code), 22 Pa. Code § 235.11(3) (prohibiting a

---

[2] Allegations were made about Katz's behavior toward several other teachers, but Arbitrator held that the only conduct that violated the District's Policies and Section 235.11(3) of Pennsylvania's Code of Professional Practice and Conduct for Educators, 22 Pa. Code § 235.11(3) (prohibiting a professional educator from "[s]exually harass[ing] a fellow employe"), and warranted discipline was that toward Co-teacher.

professional educator from "[s]exually harass[ing] a fellow employe"). (Award at 20, 23-25.) Arbitrator further found that Katz's continuous behavior had a deleterious effect on Co-teacher and "created a working environment which she reasonably found harassing, hostile, and offensive." (*Id.* at 24.) For these reasons, Arbitrator denied the grievance in part, finding that just cause existed to suspend Katz for 20 days without pay for acts of harassment against Co-teacher. (*Id.* at 28.)

With regard to the charge related to suggestive statements made to students, more specifically that he asked them to demonstrate "twerking," Arbitrator found the evidence contradictory. (*Id.* at 24.) Therefore, Arbitrator found that punishment was not merited and sustained the grievance. As to allegations made by District that Katz lied during the investigation of the sexual harassment charges, Arbitrator found that Katz did not have a genuine opportunity to answer the questions posed to him accurately. Arbitrator was not convinced Katz knowingly misled his interrogator and, therefore, did not find just cause for discipline in that regard.

Based on these determinations, Arbitrator issued the Award, which reinstated Katz with back pay, minus the 20-day suspension and unemployment compensation received, if any. Upon Katz's reinstatement, the Award authorized District to require him to undergo reasonable sexual harassment training. District filed a petition to vacate the Award with common pleas, which common pleas granted on February 23, 2016. This appeal followed.[3]

---

[3] We review challenges to grievance arbitration awards using the essence test, which gives great deference to the arbitrator's award. *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 862-63 (Pa. 2007) (*Westmoreland I*). Pursuant to the essence test, if the issue as properly defined falls within the scope of the parties' CBA, the arbitration award may only be vacated if the award "'indisputably and genuinely is without foundation in, or fails **(Footnote continued on next page…)**

4

In its opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a), common pleas concluded that although the Award satisfied the essence test, it violated the public policy against sexual harassment and, therefore, vacated the Award pursuant to the public policy exception to that test. (Common Pleas Op. at 12.) Common pleas held that the Award, reinstating Katz to the classroom despite Arbitrator's findings that Katz committed multiple and continuous acts of sexual harassment toward Co-teacher in front of students, "pose[d] an unacceptable risk of undermining the clear anti-sexual harassment policy of [the District] and the Commonwealth of Pennsylvania." (*Id.* at 13-14.)

## II.    Discussion

We must determine whether the Award violates the Commonwealth's public policy against sexual harassment and, therefore, was properly vacated by common pleas pursuant to the public policy exception to the essence test.[4] The public policy

---

**(continued…)**

to logically flow from,' the CBA." *Phila. Housing Auth. v. Am. Fed'n of State, Cnty. and Mun. Emps. Dist. Council 33,* 52 A.3d 1117, 1121 (Pa. 2012) (quoting *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999)). If the essence test is satisfied, the Court may consider whether the award violates a well-defined and dominant public policy. *Id.* "This is a pure question of law; our standard of review is *de novo,* and our scope of review is plenary." *Id.* Neither party asserts in this appeal that the Award violates the essence test.

[4] District also argues that the reinstatement of Katz undermines public policy, which requires an employee's candor when responding to an employer's investigation. District criticizes Arbitrator for not imposing any discipline on Katz for his conduct during its investigation. Arbitrator, while noting there were inconsistencies and a lack of forthrightness in Katz's answers, was ultimately not convinced Katz deliberately attempted to deceive the investigator and did not find just cause for discipline for any of District's other charges. (Award at 25.) Arbitrator was in the best position to determine Katz's credibility, and this determination **(Footnote continued on next page…)**

5

exception is narrow and "prohibit[s] a court from enforcing an arbitrator's award that contravenes public policy." *Shamokin Area Sch. Dist. v. Am. Fed'n of State, Cnty., and Mun. Emps. Dist. Council 86*, 20 A.3d 579, 582 (Pa. Cmwlth. 2011). While this exception is a narrow one, we are not to interpret it so narrowly "that it would be, as a practical matter, completely negated." *Phila. Housing Auth. v. Am. Fed'n of State, Cnty. and Mun. Emps. Dist. Council 33, Local 934*, 52 A.3d 1117, 1125 (Pa. 2012).

> The public policy exception requires the application of a three-prong test:
>
> First, the nature of the conduct leading to the discipline must be identified. Second, we must determine if that conduct implicates a public policy which is "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." . . . . Third, we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.

*City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011) (quoting *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 866 (Pa. 2007) (*Westmoreland I*)). This test "draws a necessary balance between the public employer's duty to protect the health, safety and welfare of the citizens it serves, the fair treatment of public employees and the salutary goal of [the Public Employe Relations Act[5] (PERA)] to insure the prompt

---

(continued…)
was within the sole province of Arbitrator and is beyond the scope of our review. *Narcotics Agents Reg'l Comm. v. Office of Attorney Gen.*, 936 A.2d 548, 552 (Pa. Cmwlth. 2007).

[5] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

6

resolution of labor disputes in binding arbitration." *City of Bradford*, 25 A.3d at 415.

In this case, there is no real disagreement relating to the first two prongs of the test. First, the nature of the conduct leading to Katz's discipline is the pervasive sexual harassment of Co-teacher, which created a working environment that she found to be harassing, hostile, and offensive. Arbitrator concluded that Katz's behavior violated District's general harassment and sexual harassment policies, as well as the Professional Conduct Code's prohibition against the sexual harassment of a fellow employee. While characterizing Katz's behavior as "non-physical" and "unintentional" throughout its brief, Union does not dispute the finding that Katz engaged in sexual harassment. Second, the conduct implicates a well-defined and dominant public policy. The parties agree there is a well-defined and dominant public policy against sexual harassment. This public policy is well-established in our precedent. *Phila. Housing Auth.*, 52 A.3d at 1123-24.

Here, the disagreement involves the third prong: whether, given the circumstances involved and Arbitrator's factual findings, the Award "poses an unacceptable risk that it will undermine the . . . policy" against sexual harassment and cause District to breach its lawful obligations or public duty. *City of Bradford*, 25 A.3d at 414. If it does, the Award should not be enforced. This prong "allows for consideration of the particular circumstances of the case and any attendant aggravating or mitigating factors" to determine if an award strikes the appropriate balance between the public employer's obligations and duties to the citizens it serves and the goal of binding arbitration under PERA. *Id.* at 415.

Union argues that the Award imposing a 20-day suspension and allowing District to require Katz to attend a reasonable sexual harassment training program

7

is a reasonable and calculated response to the finding of "non-physical and unintentional sexual harassment" and, therefore, does not undermine the public policy against sexual harassment. (Union's Br. at 13.) It acknowledges that "[a] public employer should be empowered to implement a zero tolerance policy when appalling, assaultive, repeated sexual harassment is at issue," *Phila. Housing Auth.*, 52 A.3d at 1124. But Union points out that termination is not required in all sexual harassment cases, *id.*, and common pleas, in essence, interpreted *Philadelphia Housing Authority* as establishing a per se zero tolerance policy in these matters. Citing several cases in which arbitration awards were upheld on appeal, Union posits that the precedent demonstrates that an arbitration award will not be vacated unless "the arbitrator's response to established misconduct is so deficient so as to fail to recognize the award's impact on public policy." (Union's Br. at 20.) Here, Union argues, the discipline Arbitrator imposed addresses Katz's misconduct and was not deficient.

District responds that the Award undermines the public policy against sexual harassment and eviscerates its ability to enforce its obligations under that policy. It contends that the Award reinstating Katz to the classroom poses an unacceptable risk and demonstrates a tolerance for sexual harassment. According to District, this Award is like the awards vacated under the public policy exception in *Philadelphia Housing Authority* and *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA-NEA*, 72 A.3d 755, 759 (Pa. Cmwlth. 2013) (*Westmoreland II*), *petition for allowance of appeal denied*, 84 A.3d 1066 (Pa. 2014). After reviewing the precedent cited by Union and District, we are persuaded by District's position.

8

In *Philadelphia Housing Authority*, the employee was discharged for verbal and physical acts of sexual harassment against a female co-worker. After hearings before an arbitrator, the arbitrator found there was not just cause to discharge the employee and reinstated him to his position without further punishment, concluding that a prior verbal warning by a supervisor was sufficient to prevent any further misbehavior. This Court vacated the award, concluding that the award violated a dominant well-established public policy against sexual harassment. In affirming, our Supreme Court concluded that the arbitrator's award, which reinstated without conditions the employee who engaged in "'extraordinarily perverse' physical sexual harassment" of a co-worker, violated public policy because it "encourage[d] individuals who are so inclined to feel free to misbehave in egregious ways, without fear of any meaningful consequence." *Phila. Housing Auth.*, 52 A.3d at 1125, 1128. Accordingly, the Supreme Court found that the award "betray[ed] a lack of appreciation for the dominant public policy" and had to be vacated. *Id.* at 1128.

In *Westmoreland II*, a school employee was discharged from her employment after being found unconscious in a school bathroom from a drug overdose when she was supposed to be supervising students. After an arbitrator's award reinstated her with conditions associated with her completing rehabilitation, this Court held, relying on *Philadelphia Housing Authority*, that the award violated public policy related to educating children about the use of illicit drugs and protecting them from exposure to such drug use. *Westmoreland II*, 72 A.3d at 759. We observed that "to reinstate an employee who attended work while under the influence, while charged with the duty of overseeing young children, with the hope that she will overcome her addiction, defies logic and violates public policy." *Id.*

9

Therefore, this Court concluded that "[t]he [a]rbitrator's award demonstrated a tolerance, rather than intolerance for illicit drug use, and is in direct contravention of public policy." *Id.*

We acknowledge that courts are to give arbitration awards deference and are not to second-guess an arbitrator's findings of fact or interpretations. *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n, PSEA*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009). But these awards are not "entitled to a level of devotion that makes a mockery of the dominant public policy against sexual harassment." *Phila. Housing Auth.*, 52 A.3d at 1127-28. Our Supreme Court, in *Philadelphia Housing Authority*, explained that "the rational way to approach th[is] question is to **recognize the relationship between the award and the conduct**; and to **require some reasonable, calibrated, defensible relationship between the conduct violating dominant public policy and the arbitrator's response**." *Id.* (emphasis added). Under this standard, we do not completely remove consideration of the underlying conduct from the inquiry. Rather, courts are to consider both aggravating and mitigating factors in determining whether an "award pose[s] an unacceptable risk that a clear public policy will be undermined if the award is implemented." *City of Bradford*, 25 A.3d at 415. After reviewing the circumstances and Arbitrator's factual findings, we are compelled to conclude the Award does just this if it is implemented.

Arbitrator found Co-teacher's testimony regarding the **continuous** nature of Katz's sexually explicit comments to Co-teacher, which occurred "all day, every day" to the point students were commenting on their relationship, "compelling, sincere, and credible." (Hr'g Tr. at 116-17, 122, R.R. at 100a, 102a; Award at 23.) When Co-teacher confronted Katz about his behavior and asked him to stop, he did

10

not apologize or accept responsibility for his behavior, but responded with yet **another** sexually-charged comment ("[s]o, I shouldn't slap your a[**]"). (Award at 23.) Common pleas recognized that these continued and ongoing comments by a senior male instructor toward a younger, first-year female teacher in the presence of ninth grade students could not only distract the students from their education but also warp the students' understanding of permissible conduct and make them believe such conduct was normal. (Common Pleas Op. at 15-16.) Without considering the effect on either Co-teacher or the students, the Award placed Katz back into the classroom despite Arbitrator's finding that Katz's **ongoing** sexual harassment of Co-teacher created a "hostile[] and offensive" environment. (*Id.* at 16 (quoting Award at 24).)

Union argues common pleas improperly re-evaluated this matter and found that Katz engaged in this conduct in front of his and Co-teacher's students, a finding not made by Arbitrator. However, Co-teacher's testimony, found credible and compelling by Arbitrator, necessarily established that **Katz had to have engaged in this conduct in front of their impressionable students** of whom he was "charged with the duty of overseeing" and educating, *Westmoreland II*, 72 A.3d at 759, in order for them to comment on a potential relationship between Katz and Co-teacher. Arbitrator either did not consider, or fully appreciate, this fact when reinstating Katz to his teaching position. Thus, we agree with common pleas "that suspending Katz for only [20] days as a result of th[is] aforementioned conduct would not only provide an unacceptable risk of undermining [the District's] policies, but . . . would effectively neuter those policies." (Common Pleas Op. at 17.)

11

Additionally, while Arbitrator imposed a 20-day suspension and authorized District to require Katz to undergo reasonable sexual harassment training, reinstating him to the same work place pending his **possibly** receiving training on why his actions were inappropriate with the **hope** that he will change his personality and learn the error of his ways is similar to the reinstatement with conditions in *Westmoreland II*. As we stated there, this result "defies logic and violates public policy." *Westmoreland II*, 72 A.3d at 759.

For these reasons, there is not a "reasonable, calibrated, defensible relationship between" Katz's continuous, hostile, offensive, and deleterious conduct "violating dominant public policy and the [A]rbitrator's response" to reinstate Katz to the classroom, even with the condition that the District could require him to attend reasonable sexual harassment training after his reinstatement. *Phila. Housing Auth.*, 52 A.3d at 1128. As such, the Award "betrays a lack of appreciation for the dominant public policy" against sexual harassment, *id.*, and "demonstrate[s] a tolerance, rather than intolerance for" such behavior "in direct contravention of public policy," *Westmoreland II*, 72 A.3d at 759.

Union seeks to distinguish *Philadelphia Housing Authority* on the basis that it involved far more egregious behavior by the grievant and an award imposing no penalty for that behavior, which demonstrated the arbitrator's lack of appreciation of the public policy against sexual harassment. Union also asserts that *Westmoreland II* provides no guidance because that case involved ongoing drug use of a teacher, "which the arbitrator could not possibly ensure could be controlled upon the return of the teacher to the classroom." (Union's Reply Br. at 8.) Union further argues that *Westmoreland II* does not support the conclusion that every violation of public policy must result in the employee's discharge because

12

this Court upheld the awards in *City of Bradford*, *Rose Tree Media Secretaries & Educational Support Personnel Association v. Rose Tree Media School District*, 136 A.3d 1069, 1080 (Pa. Cmwlth. 2016), and *Colonial Intermediate Unit #20 v. Colonial Intermediate Unit #20 Education Association, PSEA/NEA* (Pa. Cmwlth., No. 839 C.D. 2014, filed February 9, 2015).[6]  According to Union, this Award represents a sufficient response to Katz's "non-physical sexual harassment of a co-worker with a [20]-day suspension and remedial training."  (Union's Reply Br. at 8.)  We are, however, unpersuaded by Union's attempts to distinguish *Philadelphia Housing Authority* and *Westmoreland II* by diminishing Katz's continuous and reprehensible conduct toward Co-teacher and citing precedent which is distinguishable.

In *City of Bradford*, a refuse collector was discharged from his public employment for theft after taking money that had fallen from a purse found in an open garbage bag, which he subsequently surrendered to the police.  The arbitrator found that while the employee had engaged in theft, the employer had not considered certain mitigating factors when it removed him from his position.  *City of Bradford*, 25 A.3d at 411.  Thus, the arbitrator reinstated the employee subject to a long-term suspension, without back pay or benefits.  The local court of common pleas denied the employer's petition to vacate, and this Court ultimately affirmed.  Applying the public policy exception, we held that although there is a well-defined, dominant policy against on-the-job theft, the employee's reinstatement did not pose a significant risk of undermining that policy based on

---

[6]  Pursuant to this Court's internal operating procedures, an unreported opinion issued after January 15, 2008, may be cited as persuasive authority, but not as binding precedent.  210 Pa. Code § 69.414(a).

13

the presence of numerous mitigating factors, such as the employee's prior good work history, his paying restitution, the conduct was an isolated, unplanned incident, and his job did not place him in a position of public trust. *Id.* at 415-16. Unlike *City of Bradford*, there are few mitigating factors present here. While Katz did not have any prior disciplinary actions against him, it is undisputed that Katz's behavior was continuous (not isolated); when he was asked to stop, he responded with additional offensive comments; and, as a teacher, Katz clearly holds a position of public trust.

In *Rose Tree Media*, a school employee was discharged for mistreating a special needs student based on the employer's allegation that she dragged the student by his wrist for over 20 feet. The employee provided a different characterization of the incident in question, which was credited by the arbitrator. The arbitrator found that the conduct, as described by the employee, did not violate public school laws, and, after considering mitigating factors, reinstated the employee with a five-day suspension. We upheld the award, concluding that, based on the arbitrator's credibility finding, the employee "did not violate any well-defined or dominant public policy involving school violence." *Rose Tree Media*, 136 A.3d at 1080. Similarly, in *Colonial Intermediate Unit #20*, we affirmed an arbitrator's reinstatement of a special education teacher who had been removed for using aversive[7] behavior teaching and disciplinary techniques. The employer argued there was a public policy against using aversive techniques,

---

[7] "Aversive" is defined as "tending to avoid or causing avoidance of a noxious or punishing stimulus < behavior modification by [aversive] stimulation >." Merriam-Webster's Collegiate Dictionary 85 (11th ed. 2003). "Aversion therapy" is "therapy intended to suppress an undesirable habit or behavior . . . by associating the habit or behavior with a noxious or punishing stimulus." *Id.*

which the employee's conduct violated. However, we found "no error in [the arbitrator's] determination that any public policy regarding [the use of] aversive [teaching] techniques was not so well-defined [as to] and ascertainable by reference to the laws and legal precedents as to qualify for the" public policy exception. *Colonial Intermediate Unit #20*, slip op. at 23. Thus, in *Rose Tree Media* and *Colonial Intermediate Unit #20*, the employees' conduct did not violate a well-defined public policy and the second prong of the public policy exception was not satisfied. *Rose Tree Media*, 136 A.3d at 1080; *Colonial Intermediate Unit #20*, slip op. at 23. The same cannot be said about the present matter.[8]

Finally, Union suggests Katz was targeted for greater punishment than warranted by his conduct because of his involvement in Union activities. Union cites the discipline meted out to other employees of District's high school following Katz's termination. While Arbitrator referenced these subsequent instances of discipline in his decision, he clearly found Katz's behavior constituted continuous sexual harassment that created a hostile and offensive work environment. Further analysis of how and why District investigated Katz's

---

[8] Union also argues that *Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education v. Association of Pennsylvania State College and University Faculty*, 71 A.3d 353, 365 (Pa. Cmwlth. 2013), and *Bethel Park School District v. Bethel Park Federation of Teachers, Local 1607*, 55 A.3d 154, 161 (Pa. Cmwlth. 2012), support its argument that where an award imposes sufficient consequences for an employee's misconduct, like the Award here, the award should be upheld. In those cases, the arbitration awards reinstating the employees based on violations of the grievants' due process rights were vacated as being insufficient responses to the egregious conduct involved, a college professor engaging in inappropriate sexual comments to and about students while on a field trip abroad, and a teacher inappropriately touching a seventh grader, respectively. While the awards in *Slippery Rock University* and *Bethel Park School District* were vacated, these cases establish that **each** factual situation and circumstance must be individually evaluated to determine if an award contravenes public policy. Thus, they do not require a different result.

15

behavior is largely irrelevant to our determination that the Award here violates the well-established public policy against sexual harassment.

## III. Conclusion

For these reasons, the Award violates the well-established and dominant public policy against sexual harassment and must not be enforced. Accordingly, we affirm common pleas' Order vacating that Award.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Neshaminy School District | : | |
| | : | |
| v. | : | No. 410 C.D. 2016 |
| | : | |
| Neshaminy Federation of Teachers, | : | |
| Appellant | : | |

# **O R D E R**

**NOW**, September 18, 2017, the Order of the Court of Common Pleas of Bucks County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Neshaminy School District | : | |
| | : | |
| v. | : | |
| | : | |
| Neshaminy Federation of Teachers, | : | No. 410 C.D. 2016 |
| Appellant | : | Argued: May 3, 2017 |


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE                     FILED:  September 18, 2017


        The behavior of Jared Katz (Katz) was unquestionably repellant. Over the course of a year, he subjected a coworker (Coworker) (a teacher junior to Katz in years as well as length of service) to conduct agreed by all as sexually harassing in nature.  For her part, Coworker felt compelled to tolerate this behavior, declining to report it because she did not have a permanent teaching position and wanted to protect her job.  (Reproduced Record (R.R.) at 103a.)  This is precisely the sort of circumstance the public policy against sexual harassment is intended to prevent.

        As unpleasant as we find Katz's conduct, however, we cannot conclude the Award constitutes a blind tolerance to it.  The question for this Court was whether the Award posed an unacceptable risk that it would undermine the

implicated public policy against sexual harassment.  This is an exceptionally high standard.  In his decision, Arbitrator Colflesh noted both the non-physical and unintentional nature of Katz's actions and imposed a twenty-day period of unpaid leave, and authorized the District to require Katz undergo remedial sexual harassment training.  (R.R. at 331a.)

Short of a finding that the arbitration award itself contravenes public policy, the award is afforded great deference.  A reviewing court may not second-guess an arbitrator's findings of fact or interpretation, *Coatesville Area School District v. Coatesville Area Teachers' Association, PSEA,* 978 A.2d 413, 415 n.5 (Pa. Cmwlth. 2009), and a court may not reject those findings simply because it disagrees with them.  *United Paperworkers International Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 38 (1987).  This matter is not analogous to *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees,* 52 A.3d 1117, 1125 (Pa. 2012), where the employee harasser faced no consequences for his "facially criminal" conduct.  The present Award imposed a suspension without pay and required Katz undergo sexual harassment training at the discretion of the District.  As such, the Award is not so bereft of consequences that it can be said to contravene public policy.  On the contrary, in addition to the embarrassment of a suspension from employment, the Award grants broad authority to the District to impose whatever level, form or intensity of sexual harassment training it deems necessary to address Katz's grossly improper conduct.

Perhaps each member of this Court would have reached a different conclusion than the Arbitrator.  That is not the point.  Arbitration provisions are an essential part of the collective bargaining process and must be free of meddling from the bench.    The Majority's reaction to this dreadful situation is

understandable, but it nonetheless encroaches upon the arbitration mechanism to which the present parties agreed.

For these reasons, I respectfully dissent.


_____
JOSEPH M. COSGROVE, Judge


President Judge Leavitt joins in this dissent.