# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Falls Township,                      :
                    Appellant        :
                                     :   No. 503 C.D. 2023
          v.                         :   SUBMITTED:  April 11, 2024
                                     :
Police Association of Falls Township :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  May 10, 2024**


Falls Township appeals from an order of the Court of Common Pleas of Bucks County denying the Township's petition to vacate arbitration award and affirming the grievance arbitration award rendered pursuant to the Policemen and Firemen Collective Bargaining Act (Act 111).[1]  In the award, the arbitrator determined that the Township's discharge of Grievant, Stephanie Metterle, was not supported by just cause and reduced the discharge to a 30-day suspension.  We affirm.

As summarized from the Arbitrator's award, the facts are as follows. Grievant worked as a police officer for the Township for approximately ten years until her October 20, 2020 discharge for an alleged second violation of Section 103.175 of the Falls Township Police Department Code. The Code addresses

---

[1] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

Conduct Unbecoming an Officer in the form of "[r]epeated violations of Department Rules & Regulations and/or any other course of conduct indicating that a member has little or no regard for his/her responsibility as a member of the Police Department." Jan. 5, 2022 Arb. Award at 1-31; Reproduced Record (R.R.) at 14a-44a. The Township's impetus for the discharge was its determination that Grievant made false statements in her March 2019 complaint to the Pennsylvania Human Relations Commission (PHRC) by alleging that she had been a member of the multi-county Major Incident Response Team (MIRT) but had been removed in favor of a male officer.[2] Past misconduct included a 30-day suspension in 2012 for an off-duty fight and a 10-day suspension in 2018 for falsifying records by submitting overtime slips listing herself as "off" while she was out testifying when, in fact, she was working a modified-duty day shift. *Id*. at 19-20; R.R. at 32a-33a.

Before the arbitrator, the parties stipulated to the following issue: "Whether the Township had just cause for the discharge of Grievant? If not, what shall the remedy be?" *Id*. at 2; R.R. at 15a. Following hearings held on July 21 and August 16, 2021, the arbitrator rendered the following award:

> The discharge was not supported by just cause. The discharge is reduced to a thirty (30) day suspension. The Township is ordered to reinstate the Grievant to her former position; restore her seniority; and make her whole for any loss of wages (minus the 30-day suspension), benefits, and other emoluments of employment flowing from the

---

[2] Following the events of September 11, 2001, MIRT was formed to respond to emergencies as well as to provide coverage for large-scale events, natural disasters, terrorist threats, crowd/riot control, and dignitary protection. Jan. 5, 2022 Arb. Award at 3-4; R.R. at 16a-17a. Generally, MIRT includes Philadelphia, Bucks, Delaware, and Montgomery counties, with Chester County sometimes also being included. *Id*. at 3; R.R. at 16a. "The initial training for members, going back to 2003 or 2004, included and still includes five days of training, involving riot control, crowd control, formations and movements, personal protective equipment, hazardous materials and 'officer down' training." *Id*. at 7-8; R.R. at 20a-21a.

discharge. The Township is ordered to adjust the Grievant's disciplinary records to reflect the altered discipline.

*Id*. at 31; R.R. at 44a.

On appeal, the trial court denied the Township's petition to vacate arbitration award and affirmed the award. The Township's appeal to this Court followed. When reviewing appeals from Act 111 grievance arbitration awards, our Supreme Court has held that "[t]he narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *City of Phila. v. Fraternal Ord. of Police Lodge No. 5*, 677 A.2d 1319, 1422 (Pa. Cmwlth. 1996) [quoting *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 656 A.2d 83, 85 (Pa. 1995)].

Before this Court, the Township argues that the arbitrator exceeded his authority by impermissibly requiring the Township to violate the clear mandates of its disciplinary code where the only available penalty thereunder should have been dismissal. In addition, the Township maintains that the arbitrator's penalty reduction thereby lowering the agreed-upon standard of maintaining the highest moral compass of policing violated (1) Article 30 of the parties' collective bargaining agreement (CBA), prohibiting unilateral reform of the CBA; and (2) Article 2, Section 2 of the CBA, the parties' agreement that "[t]he Department of Police and the individual members of [Police Association of Falls Township] PAFT . . . are to be governed by the highest standards of honor, integrity and dedication in all their public and personal conduct in order that the Department . . . and the individual members of PAFT may merit the respect and confidence of the general public it

3

serves." Art. 2, Sec. 2 of the CBA between the Township and PAFT, Jan. 1, 2013-Dec. 31, 2017 at 2; Original Record (O.R.) at 23.[3]

The Township's position is without merit. As this Court has acknowledged: "[T]he arbitration process *allows arbitrators to modify disciplinary penalties and fashion appropriate awards based on the specific facts of a given case.*" *In re Melamed*, 287 A.3d 491, 500-01 (Pa. Cmwlth. 2022) (emphasis in original) [quoting *Cnty. of Allegheny v. Allegheny Cnty. Prison Emps. Indep. Union*, 244 A3d 873, 882 (Pa. Cmwlth. 2020)]. Notably, the parties in the present case stipulated that the issue before the arbitrator included the appropriate remedy. Jan. 5, 2022 Arb. Award at 2; R.R. at 15a. In addition, mindful that the arbitrator considered Article 2 of the CBA,[4] his determination that Grievant's statements in her PHRC complaint were false did not dictate that he find just cause for the discharge.

In addressing the specific facts of the present case, the arbitrator considered the effect of management fault on an arbitrator's ability to reduce discipline. *See id*. at 31; R.R. at 44a. In so doing, he painstakingly outlined the witnesses' testimony and his respective credibility determinations. As an initial matter, he noted the parties' agreement that a MIRT detail was assigned to the 2018 Philadelphia Eagles Super Bowl Parade. *Id*. at 4; R.R. at 17a. Upon Grievant's learning that three Township police officers had been sent to Philadelphia as part of a MIRT detail and that she was more senior than one of them, Grievant asserted that she should have been given the opportunity to work the parade detail and submitted a request for the overtime that would have been due had she done so. *Id*.

---

[3] Because the original record was filed electronically and not paginated, the original record page number references the electronic pagination.

[4] *See* Jan. 5, 2022 Arb. Award at 31; R.R. at 44a.

4

Notwithstanding the fact that Chief Wilcox tasked then-Lieutenant Whitney, now Chief Whitney, to determine whether Grievant was a member of MIRT and, therefore, entitled to overtime, Lieutenant Pletnick processed the overtime slip signed by Sergeant Belinsky and Grievant received the requested overtime payment before Whitney concluded his investigation. *Id*. at 6; R.R. at 19a. "Pletnick indicated that, since Belinsky had signed it, 'that was good enough for him.'"[5] *Id*. Ultimately, the Township concluded that Grievant had never been a member of MIRT. *See id*. at 4-7; R.R. at 17a-20a.

Given Whitney's experience with Grievant, Whitney decided to clarify which officers were in MIRT and the requirements for an officer to be included. *Id*. at 6; R.R. at 19a. After discussions with Lieutenant Pennington, the assistant team commander for the Bucks County MIRT, Whitney was left with the impression that MIRT team operations were much more relaxed than special weapons and tactics (SWAT) team operations. Consequently, Whitney sent out an April 10, 2018 memorandum listing active members of MIRT and advising all other officers that they were ineligible for MIRT activities. In part, the memo provided: "If you are not on this list, you are not part of MIRT and not eligible for any MIRT activities . . . . If you were formally [sic] on MIRT, please turn in all of your MIRT equipment to [Lieutenant] Ward." *Id*. at 14-15; R.R. at 27a-28a. Because Grievant was not on the list that Pennington provided to Whitney, she was not on the list of active members. *Id*. at 6-7; R.R. at 19a-20a. "Pennington acknowledged on cross that the MIRT leadership relies upon the individual departments to notify MIRT of changes in membership status." *Id*. at 9; R.R. at 22a.

---

[5] Indeed, "[t]he request was approved by three supervisors, including Corporal Pinto, Sergeant Belinsky (who actually signed the slip before an investigation was undertaken), and Lieutenant Plotkin." *Id*. at 29; R.R. at 42a.

Upon receiving the April 2018 memorandum listing active MIRT members, Grievant expressed surprise that she nonetheless had been paid overtime for the Eagles Parade. She emailed Whitney and asked whether she was being removed from MIRT. He advised her to talk to Ward if she wanted to be on MIRT. Grievant "testified that she did not contact [] Ward because, in a conversation with Whitney, he advised her that it might be better if she concentrated on her accident reconstruction duties and her good work with traffic tickets and arrest on patrol." *Id*. at 18; R.R. at 31a. Grievant acknowledged that Whitney advised her that, from what he had learned, Grievant had never been on MIRT. *Id*.

In March 2019, Grievant filed a complaint with PHRC. Pertinent here, she alleged in paragraph 12 that she was removed from MIRT in February 2018 and replaced by a male member of the team. In addition, she alleged that Whitney "informed her that she had never been on MIRT despite the fact that she had previously undergone MIRT training and had worked on MIRT details." *Id*. As noted, the Township discharged Grievant in October 2020 for making false statements in her PHRC complaint pertaining to MIRT.

After rendering credibility determinations and weighing the relevant evidence of record, the arbitrator concluded that Grievant knew the falsity of her assertions that she was removed from MIRT and replaced with a male member. *Id*. at 30; R.R. at 43a. In support, the arbitrator noted the fact that Grievant was never advised that she was on MIRT, never engaged in the five days of core training required of new team members, never received equipment or a MIRT identifier, and never registered as part of the Everbridge Notification System used as a communication system for the team. *Id*. at 27-28; R.R. at 40a-41a. The arbitrator emphasized Grievant's inability to return a MIRT uniform and/or equipment. In that

regard, Whitney testified that the easiest way to prove whether Grievant was on MIRT was to have her produce the uniform. *Id*. at 5; R.R. at 18a. Soon after Whitney made the request, he ran into Grievant outside the MIRT equipment closet at which time she claimed to have lost the uniform. *Id*. Rejecting Grievant's testimony, the arbitrator found: "I don't believe that [Grievant] ever had the uniform, and thus could not have lost it[; T]he conversation between [Grievant] and Whitney that day convinces me that [she] really knew she was not on the MIRT team." *Id*. at 29; R.R. at 42a.

In reducing the discharge to a 30-day suspension, the arbitrator reasoned:

> Based upon my findings, [Grievant] breached the high standards in place through the misconduct found here. The Township urges that, as this is a second violation of Section 103.175, the disciplinary scale calls for discharge. In this just cause analysis, however, management was at fault too for not fully addressing the issues at the time then-Lieutenant Whitney investigated the MIRT overtime request for the Eagles Parade overtime and, instead paying her for the overtime. As such, I find it appropriate to reduce the penalty from discharge to a 30-day suspension.

*Id*. at 31; R.R. at 44a. Notably, Grievant "was never advised that this overtime payment was made in error." *Id*. at 29; R.R. at 42a. Accordingly, we discern no issue with the arbitrator's having considered the specific facts of the case and fashioning an appropriate award.

Next, the Township argues that the trial court erred in refusing to consider the Township's public policy concerns. If this Court determines that the trial court so erred, the Township urges this Court to modify the narrow certiorari review to allow for consideration of such concerns and to reverse where an

7

arbitrator's award is contrary to public policy, fails the test for judgments notwithstanding the verdict employed by the Uniform Arbitration Act (UAA),[6] or fails the essence test employed in review of arbitration awards issued under the Public Employe Relations Act (PERA).[7]

We reject the Township's position.[8] As noted, our Supreme Court established the narrow certiorari review for courts to use when reviewing appeals from Act 111 grievance arbitration awards. Notably, the Supreme Court has rejected calls to expand the narrow certiorari review to include public policy concerns. The Supreme Court reasoned:

> Broadening the narrow certiorari scope of review to include a provision which would allow the courts to interfere with an arbitrator's award whenever that award could be deemed to be violative of "public policy" - however that nebulous concept may be defined by a particular appellate court - would greatly expand the scope of review in these matters. If we were to adopt the State Police's recommendation to include this ill-defined term

---

[6] 42 Pa.C.S. §§ 7301-7320. Section 7302(d)(2) of the UAA provides that "a court in reviewing an arbitration award pursuant to this subchapter shall . . . modify or correct an award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." 42 Pa.C.S. § 7302(d)(2).

[7] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301. For employees covered by PERA, grievance arbitration awards are reviewable under "the highly circumscribed 'essence test[.]'" *City of Bradford v. Teamsters Loc. Union No. 110*, 25 A.3d 408, 412 (Pa. 2011). Pursuant thereto, a reviewing court must first "decide whether the issue is encompassed by the CBA [at issue]," and "second, the court must uphold the arbitrator's award if the arbitrator's interpretation can rationally be derived from the CBA." *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 996 (Pa. 2019). The narrow public policy exception to the essence test prohibits enforcement of an arbitrator's award that contravenes public policy. *Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 171 A.3d 334, 338 (Pa. Cmwlth. 2017).

[8] As PAFT observes, the Township preserved an argument as to the applicability of the UAA but not PERA. PAFT's Br. at 37 n.11.

8

within the narrow certiorari scope of review, we would markedly increase the judiciary's role in Act 111 arbitration awards. This would undercut the legislature's intent of preventing protracted litigation in this arena.

*Pa. State Police v. Pa. State Troopers Ass'n*, 741 A.2d 1248, 1252-53 (Pa. 1999).

Moreover, noting that we were bound by Supreme Court precedent, this Court in *Borough of State College v. Borough of State College Police Association*, 303 A.3d 248, 259 (Pa. Cmwlth. 2023), reiterated that "the standard of review for Act 111 cases does not encompass, and this Court cannot expand it to include, a public policy exception under the excess powers prong of narrow certiorari."

Accordingly, we affirm.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Falls Township,                              :
                    Appellant                :
                                             :   No. 503 C.D. 2023
              v.                             :
                                             :
Police Association of Falls Township         :

# **O R D E R**

AND NOW, this 10th day of May, 2024, the order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

 

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita