# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,          :
Pennsylvania,                  :
              Appellant     :
                                  :
          v.              :    No. 1742 C.D. 2018
                                  :    Argued: October 3, 2019
Allegheny County Prison Employees   :
Independent Union            :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: November 7, 2019**

The County of Allegheny, Pennsylvania (County) appeals from an Order of the Court of Common Pleas of Allegheny County (common pleas) denying the County's Petition to Vacate an Act 195[1] Arbitration Award (Petition to Vacate). The Arbitration Award converted correctional officer David Foriska's (Grievant) termination for excessive use of force to a 30-day suspension and reinstated him with 11 months' back pay. As it did before common pleas, the County argues the Arbitration Award does not derive its essence from the Collective Bargaining Agreement (CBA) with the Allegheny County Prison Employees Independent Union

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301. Act 195, as it is commonly referred to, is the Public Employe Relations Act.

(Union) and it violates public policy. After thorough review, we are constrained to affirm.

## I. Factual Background

### a. Grievance and hearing

The County discharged Grievant on October 27, 2017, for violations of the County's Bureau of Corrections' Policies. Specifically, Grievant was discharged for violations of Policy 207, governing use of force, and Policy 605, the code of ethics, in a September 2017 incident involving Grievant and D.J. (Arrestee), a new arrestee. Policy 207 provides that use of force "is authorized when an employee reasonably believes such force is necessary to accomplish" certain enumerated objectives for protection and compliance with County rules and regulations. (Reproduced Record (R.R.) at 140a.) Policy 605 prohibits employees from "knowingly or willfully submit[ting] a report containing false statements." (*Id.* at 152a.) Policy 605 also delineates certain "no tolerance policies," which include submitting false reports and "[a]ssaults and gross violations of use of force on inmates." (*Id.* at 152a-53a.) Policy 605 sets forth that violations of no tolerance policies "will result in severe disciplinary action up to termination of employment," and "do not fall within the perimeters of progressive discipline." (*Id.* at 153a.)

The County determined that Grievant's discharge was warranted because Grievant struck Arrestee in violation of Policy 207[2] and did not report his actions as a strike when he reported the incident after the fact, in violation of Policy 605.

---

[2] A five-level use of force continuum is set forth in Policy 207, with one being the least amount of force reasonably expected and five being the most. The County discharged Grievant for striking Arrestee, which fell under level four of the continuum and, in the County's opinion, was not appropriate under the circumstances.

2

Following Grievant's discharge for these violations, the Union filed a grievance, and an arbitration hearing was held on May 2, 2018. On behalf of the County, chief deputy warden at the Allegheny County Jail (Deputy Warden) testified. A retired County corrections officer (Corrections Officer), a retired Pennsylvania State Police trooper and use of force consultant (Consultant), and Grievant testified on the Union's behalf.

Generally, the testimony was as follows. Deputy Warden reviewed the surveillance video of the incident and Grievant's report of it, and testified he believed the video depicted Grievant pushing Arrestee to the ground after she turned towards him while he and another officer escorted her to a holding cell. Deputy Warden testified that this was in violation of the use of force policy, and Grievant's report of the incident thereafter did not accurately represent his actions. Deputy Warden also testified that Grievant had two prior disciplines for use of force violations, one of which was withdrawn and one of which resulted in a three-day suspension. Corrections Officer testified that his review of the video indicated that Grievant's actions were appropriate, as he did not strike Arrestee but followed protocol to put his hands up in protection when Arrestee turned towards him. Consultant testified that he saw no attempted use of force in his review of the video; rather, Arrestee was intoxicated, which affected her motor skills, and Grievant was significantly larger than Arrestee, meaning that when Arrestee suddenly stopped and turned, Arrestee's collision with Grievant caused her fall. Grievant testified that Arrestee was intoxicated and disruptive that night, and he followed protocol and was positioned slightly behind Arrestee during the escort when Arrestee suddenly stopped and turned with her hands raised. Grievant testified that he put out his hand,

3

and Arrestee collided with him and fell. Following the hearing, both parties submitted post-hearing briefs.

### b. *Arbitrator's factual findings*

Based on the testimony provided and the surveillance video shown, the Arbitrator found as follows. On September 29, 2017, Grievant was working at the Allegheny County Jail doing intake. Arrestee was brought in for processing around 11:30 p.m. and was intoxicated, "uncooperative and at times belligerent," and "acting in a verbally abusive manner toward the intake [c]orrections [o]fficers." (Arbitration Award at 6.) After Arrestee was medically evaluated and processed, Grievant and a fellow corrections officer escorted Arrestee down a hallway to a holding cell. The surveillance video shows that there were two instances of physical contact between Arrestee and Grievant, although it was only the second contact that formed the basis for Grievant's discharge. The Arbitrator explained:

> After the initial contact, the video shows [Arrestee], while being escorted down the hallway by the [G]rievant and another [c]orrections [o]fficer, turn toward the [G]rievant. [Arrestee] did not strike or push the [G]rievant. There is no audio accompanying the video, so it is not known what, if anything, [Arrestee] said to the [G]rievant. However, credible testimony at [the] hearing indicates that [Arrestee] continued to be verbally abusive toward the [G]rievant.

> The [G]rievant reacted to [Arrestee] turning toward him. The [G]rievant extended his arms and made contact with [Arrestee]. [Arrestee] fell to the floor but was not injured.

(*Id.*) Grievant voluntarily reported the incident, explaining in a written statement that Arrestee "ran into him, causing her to fall." (*Id.* at 7.) Grievant described in his report that he "put [his] hand up to redirect" Arrestee and told her to proceed to the cell, at which time Arrestee "walked into [Grievant's] hand and fell to the ground."

4

(*Id.*) The County discharged Grievant[3] for his actions in this incident and the report he filed thereafter, alleging violations of Policies 207 and 605.

### c. *Arbitrator's award*

#### 1. Policy 207, Use of Force

Arbitrator stated that the issue before the Arbitrator was whether the County had just cause to discharge the Grievant and, if not, what would be the appropriate remedy. Beginning with Policy 207, which relates to the use of force, the Arbitrator summarized the requirement that officers are to use the least amount of force necessary to achieve an authorized purpose and noted the County's position that Grievant struck the Arrestee, which was not the least amount of force necessary to control Arrestee under the circumstances. (*Id.* at 12.) The Arbitrator disagreed with the County's position, reasoning that "[t]he evidence on which this case turns is not the dueling testimony" regarding whether Grievant used appropriate force, but "the videotape of the incident." (*Id.*) In the Arbitrator's opinion, the video was "inconclusive as to whether the [G]rievant struck the [A]rrestee," as it showed that Grievant extended his arms and Arrestee fell to the ground but the amount of force involved was unclear. (*Id.*) It was not unreasonable, in the Arbitrator's opinion, to find that Grievant "reacted instinctively toward a belligerent inmate who turned around in his direction." (*Id.*) Relying on Consultant's testimony as to the effects of intoxication and the disparity in size between Grievant and Arrestee depicted in the video, the Arbitrator explained that it was "entirely plausible that even the slightest incidental contact" between Grievant and Arrestee could cause Arrestee to

---

[3] Although not noted by the Arbitrator, Grievant was provided a due process hearing pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), on these charges prior to his discharge. (R.R. at 115a.)

5

fall to the floor. (*Id.* at 12-13.) Nonetheless, the Arbitrator did not agree that Arrestee walked into Grievant's hand as Grievant reported following the incident.

The Arbitrator rejected the County's argument in its post-hearing brief that the Arbitrator was bound by a prior arbitration award by Arbitrator Atul Maharaja (Maharaja Award) between the County and the Union involving a different grievant and a violation of the County's anti-fraternization policy. The County argued that, like the anti-fraternization policy, the use of force policy and ethics code are no tolerance policies; thus, as explained in the Maharaja Award, the County could discharge employees for violations of these policies without just cause. The Arbitrator disagreed that the Maharaja Award was binding because it involves "a completely different fact scenario" and the anti-fraternization policy. (*Id.* at 13.) The Arbitrator determined that the County was required by the CBA to establish just cause for discharge by clear and convincing evidence.

The Arbitrator acknowledged that Grievant had two prior disciplines for use of force violations and cautioned that Grievant "would be wise to be more careful in his dealings with arrestees and inmates and control his temper." (*Id.* at 14.) Acknowledging that it was possible that Grievant struck Arrestee given the inconclusive evidence, the Arbitrator concluded, nonetheless, that the County did not meet its burden because it did not "establish by clear and convincing evidence that the [G]rievant struck the [A]rrestee. Therefore, the County ha[d] not established just cause for disciplining the [G]rievant on the grounds of excessive force." (*Id.*)

2. Policy 605, Code of Ethics

With regard to the code of ethics violation, the Arbitrator reiterated that the video showed Grievant extending his arms and making contact with Arrestee after Arrestee turned around; it did not appear that Arrestee walked into Grievant's hand

6

as Grievant described the incident in his report. Therefore, the Arbitrator found that Grievant's statement "was not . . . accurate." (*Id.*) However, because the County had not met its burden of proving that Grievant violated the use of force policy, the Arbitrator concluded that while the "statement may have been inaccurate," it was "questionable" whether Grievant "knowingly or willfully submit[ted] a report containing false statements." (*Id.* at 14-15.) Therefore, the County had not met its burden to prove a violation of Policy 605 either.

Accordingly, given the circumstances of the case and the fact that the County had not met its burden, along with Grievant's initiative to report the incident, and his tenure working at the jail, the Arbitrator determined that mitigation of the penalty was warranted and converted the discharge to a 30-day suspension and ordered that Grievant be made whole with back pay.

### d. *Petition to Vacate and common pleas' Order*

Thereafter, the County filed its Petition to Vacate with common pleas, arguing that the Arbitration Award did not draw its essence from the CBA and it violated public policy. Common pleas, by Order dated December 4, 2018, denied and dismissed with prejudice the County's Petition to Vacate. The County then appealed to this Court. In its statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), the County reasserted the same bases for error as it did in its Petition to Vacate.

Common pleas issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), emphasizing that its review was narrow and precluded a merits analysis of the arbitration proceedings. Common pleas recounted the Arbitrator's findings as to what the video showed of the incident and any relevant credibility determinations the Arbitrator made.

7

With regard to the County's assertion that the Arbitration Award did not draw its essence from the CBA, common pleas concluded that the issue as stated by the Arbitrator was within the terms of the CBA and the rationale underlying the Arbitration Award was sound. It was within the Arbitrator's authority to evaluate the evidence and determine that the County did not meet its burden, common pleas found, and although, "for the sake of argument, it may have been rational for the Arbitrator to find that . . . Grievant did strike the inmate, the essence test does not allow a receiving [c]ourt to weigh one rational interpretation over another." (Rule 1925(a) Opinion (Op.) at 5 (emphasis omitted).) Common pleas also agreed with the Arbitrator's conclusion that the Arbitrator was not bound by the Maharaja Award.

Common pleas rejected the County's argument that the Arbitration Award violated public policy, noting that the inquiry under a public policy analysis is "whether the Arbitration Award, if enforced, would violate public policy," rather than whether a grievant's misconduct violates public policy. (*Id.* at 6 (citing *Blairsville-Saltsburg Sch. Dist. v. Blairsville-Saltsburg Educ. Ass'n*, 102 A.3d 1049, 1052 (Pa. Cmwlth. 2014)).) The Arbitration Award reinstating Grievant did not violate public policy or "sanction conduct that[ ]was against public policy," common pleas stated, as "[t]he Arbitrator found and weighed the facts leading to [Grievant's] termination and found no violation of use of force or ethics." (*Id.*) Common pleas explained that while "the County tried to persuade the [A]rbitrator" that Grievant was "a bad employee who used excessive force and should have been terminated," the Arbitrator rejected this. (*Id.*) To accept that argument from the County now, common pleas stated, would require it "to change the Arbitrator's findings, which is

8

not permissible review." (*Id.*)  Accordingly, common pleas concluded that its Order denying the Petition to Vacate should be sustained.

## II.    Review of arbitration awards

This Court's role in reviewing arbitration awards under Act 195 is one of deference.  *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Assoc. (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999) (*Cheyney Univ.*).  We recognize "there is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a [CBA]."  *Id.*  Accordingly, we review the Arbitration Award using the essence test, where "if the issue as properly defined falls within the scope of the parties' CBA, the arbitration award may only be vacated if the award 'indisputably and genuinely is without foundation in, or fails to logically flow from,' the CBA."  *Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 171 A.3d 334, 337 n.3 (Pa. Cmwlth. 2017) (citation omitted); *see also Cheyney Univ.*, 743 A.2d at 413.  If the essence test is satisfied, then the Arbitration Award can be vacated only if it meets the narrow public policy exception, meaning that enforcement of the award would contravene a well-defined, dominant public policy. *Shamokin Area Sch. Dist. v. Am. Fed'n of State, Cty., & Mun. Emps. Dist. Council 86*, 20 A.3d 579, 582 (Pa. Cmwlth. 2011).  We are bound by the arbitrator's findings of facts in making these determinations.  *Blairsville-Saltsburg Sch. Dist.*, 102 A.3d at 1050.

## III.    Discussion

### a. *Whether the Arbitration Award draws its essence from the CBA.*

The County asserts that the Arbitration Award does not draw its essence from the CBA and argues as follows.  The Arbitrator was required to apply the binding interpretation of the no tolerance provisions from the Maharaja Award in order to

9

ensure stability where identical CBA provisions are interpreted in different arbitrations. *Bradford Area Sch. Dist. v. Bradford Area Educ. Ass'n*, 663 A.2d 862, 864 n.1 (Pa. Cmwlth. 1995). The Maharaja Award determined just cause was not necessary for no tolerance policy violations and that interpretation was binding. Because the Arbitrator did not follow the Maharaja Award, the Arbitration Award does not draw its essence from the CBA. By determining that the just cause standard applied, the County asserts that the Arbitrator "add[ed] new p[rere]quisites to the disciplinary process" for violations of no tolerance policies and allows arbitrators to modify the County's right to terminate employment without just cause for no tolerance policy violations. (County's Brief (Br.) at 21.)

The Union responds that the Arbitration Award is rationally derived from the CBA and complies with the essence test and argues as follows. The Arbitrator's findings of fact, which are unreviewable, are "not inconsistent" with the conclusions reached in the Arbitration Award. (Union's Br. at 24.) The Union recounts the factual findings made by the Arbitrator and the consistent conclusions drawn therefrom. The Arbitrator concluded that the County did not meet its burden to show a violation of the use of force or ethics policies, and this Court cannot weigh one rational interpretation over another in reviewing an arbitrator's award, particularly here where the Arbitration Award is rationally derived from the CBA.

The essence test requires that Act 195 arbitration awards derive their essence from the parties' CBA. The essence test is two-pronged. First, we must "determine if the issue as properly defined is within the terms of the [CBA]." *Cheyney Univ.*, 743 A.2d at 413. If the first prong is met and the issue is properly before the arbitrator, under the second prong, the award "will be upheld if the arbitrator's interpretation can rationally be derived from the [CBA]." *Id.* In other words, the

10

Court will "only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]." *Id.*

Here, the issue, as set forth by the Arbitrator was "whether the County had just cause to discharge the [G]rievant and, if not, what is the appropriate remedy[.]" (Arbitration Award at 2.) Article XVII of the parties' CBA provides that the County "has the right to discharge or suspend any employee for just cause." (R.R. at 46a.) The County argues that the essence test is not met because just cause is not needed for violations of no tolerance policies, including "[a]ssaults and gross violations of use of force on inmates" and submitting false reports. (*Id.* at 153a.) The Union counters that the Code of Ethics cannot be incorporated into the CBA and alter its provisions without proceeding through collective bargaining. The issue of whether a violation has occurred warranting discharge or suspension is within the terms of the CBA and the first prong of the essence test is satisfied. We do not reach the argument of whether just cause is needed for terminations based on no tolerance policy violations because the Arbitrator concluded there was no violation of the policies in the first place and we are bound by the Arbitrator's findings of fact in making these determinations. *See Blairsville-Saltsburg Sch. Dist.*, 102 A.3d at 1050.

Next, we look to determine whether the Arbitrator's Award can be rationally derived from the CBA. We conclude that it can. The Arbitrator made binding factual determinations that the County did not meet its burden to prove violations of either Policy 207 or Policy 605. The County argues that the Arbitration Award does not meet the essence test because the Arbitrator did not follow the Maharaja Award and eliminate the just cause requirement for a **violation** of no tolerance policies. However, before we can examine what remedies the County has for a violation of

11

the no tolerance policies, there must be a violation of no tolerance policies. Here, the Arbitrator found the County did not prove there was such a violation.

The County asserts that the anti-fraternization policy at issue in the Maharaja Award was a similar no tolerance policy to those found in Policies 207 and 605. We need not reach that, however, because in the Maharaja Award, the arbitrator concluded that the grievant there **did violate** the no tolerance anti-fraternization policy and explained that the County reserves the right to terminate **violators** of these policies without just cause under the no tolerance policy provision. (*Id.* at 253a.) In contrast, in this case, the Arbitrator concluded that the County did not prove that Grievant violated the no tolerance policies. The Arbitrator concluded that the County did not meet its burden to prove by clear and convincing evidence that Grievant struck Arrestee; thus there was no proven assault or "gross violation[] of use of force on inmates," implicating the no tolerance policy with regard to Policy 207. (*Id.* at 153a; Arbitration Award at 14.) The Arbitrator found the video demonstrated that Grievant extended his arms and made contact with Arrestee; thus, his representation in the report that she walked into his hand was not accurate. However, because the County did not meet its burden to show that Grievant struck Arrestee or used excessive force, the Arbitrator concluded that the County did not meet its burden to show that the inaccurate report was knowingly or willfully submitted with false statements. Because the Arbitrator found that the County did not meet its burden for a violation of Policy 605, the no tolerance policy was again not implicated. (Arbitration Award at 15.) In the absence of a violation of a no

tolerance policy, the just cause standard is unquestionably the correct standard to apply, even by the County's broad understanding of the Maharaja Award.[4]

Because the Arbitrator found that the County did not meet its burden to prove violations of the no tolerance policies, the Arbitrator did not need to follow the Maharaja Award. Contrary to the County's assertion, there is no risk of inconsistency or instability from these two arbitration awards because of these differing factual findings made by the arbitrators. These awards do not constitute two different interpretations of the same provision. This Arbitration Award does not implicate the no tolerance policy provisions at all because the Arbitrator found that the County did not meet its burden to show any violations of those policies. Accordingly, the Arbitration Award derives from the CBA and satisfies the essence test.

*b. Whether the Arbitration Award violates public policy*

The County argues that the Arbitration Award is contrary to public policy for two reasons: (1) the Arbitrator did not follow the interpretation of the no tolerance policy from the Maharaja Award; and (2) the Arbitration Award does not protect the constitutional rights of Arrestee. The County argues as follows. The Arbitrator's decision not to follow the Maharaja Award's interpretation of the no tolerance policy violates the defined public policy in favor of stability and uniformity in law. *Bradford Area Sch. Dist.*, 663 A.2d at 864 n.1. Consistency in interpretation of CBA provisions is critical and to hold otherwise "renders the arbitration process

---

[4] The County supports its broad interpretation and application of the Maharaja Award here by citing *Bradford Area School District*, 663 A.2d at 864 n.1, where this Court determined that "for the sake of stability in collective bargaining relations, an arbitrator must accept a prior arbitration decision interpreting an identical contract provision in a subsequent arbitration involving the same parties." It is not necessary for us to decide whether the County's interpretation is correct.

13

meaningless." (County's Br. at 28.) By ignoring the Maharaja Award, the Arbitration Award poses a risk to public policy because CBA interpretations will remain unsettled in perpetuity, creating the potential for disorderly relationships that Act 195 seeks to avoid.

Further, the County argues, the Arbitration Award, contrary to public policy, violates the established standards for the treatment of inmates. It is the County's position that Grievant struck Arrestee, which was not the least amount of force necessary given the circumstances. Pursuant to the Eighth Amendment to the U.S. Constitution, U.S. CONST. amend. VIII, inmates and pretrial detainees have the right to be free from cruel and unusual punishment and a use of physical force may violate those rights, even where there are no injuries. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). This defined policy regarding protecting incarcerated individuals from mistreatment is set forth in Policy 207 restricting the use of force to only that which is reasonably necessary to obtain the enumerated objectives. Grievant's underlying conduct must be considered in relation to the Arbitration Award and the defined public policy of protecting incarcerated individuals from mistreatment, along with any mitigating and aggravating factors. In this case, the Arbitrator found aggravating factors to exist, such as the disparity in size between Grievant and Arrestee and Grievant's two prior disciplines for use of force. The deference afforded to labor arbitrator's awards, such as this one, cannot be used to "make[] a mockery of the dominant public policy." (County's Br. at 39 (quoting *Phila. Hous. Auth. v. Am. Fed'n of State, Cty., & Mun. Emps., Dist. Council 33, Local 934*, 52 A.3d 1117, 1128 (Pa. 2012)).)

The Union responds that the Arbitration Award does not violate public policy for either reason and argues as follows. The Maharaja Award is not binding and

does not eliminate the County's requirement under the CBA to have just cause for discharging an employee. The question under a public policy inquiry is not whether a grievant's misconduct violates public policy, but whether the enforcement of the arbitration award does. Based upon the binding facts found by the Arbitrator here,[5] there is no violation of public policy or Arrestee's constitutional rights. Despite the County's assertion that Grievant poses a risk to inmates, the County reinstated him following the Arbitration Award and he continues to remain employed at the jail.

The Union also argues the Arbitration Award is not contrary to a public policy of protecting inmates' constitutional rights. The Arbitration Award did not absolve Grievant of consequences for his actions but concluded only that discharge was not warranted. Given the facts as found by the Arbitrator, Grievant's conduct was not unreasonable and, therefore, enforcement of the Arbitration Award does not violate a defined public policy or Arrestee's constitutional rights. The Union asks us to affirm.

The public policy exception to the essence test prohibits courts "from enforcing an arbitration award that contravenes public policy." *Neshaminy Sch. Dist.*, 171 A.3d at 338 (quoting *Shamokin Area Sch. Dist.*, 20 A.3d at 582). We interpret this exception narrowly and apply a three-prong test to determine if the award in question is contrary to public policy. *Id.*

> First, the nature of the conduct leading to the discipline must be identified. Second, we must determine if that conduct implicates a public policy which is "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." . . . Third, we must determine if the arbitrator's award poses an unacceptable risk that it

---

[5] The Union, in its brief, recounts in full the testimony given at the hearing to support the Arbitration Award. Because the Arbitration Award meets the essence test and these facts are binding, we omit discussion of the Union's argument on this point.

will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.

*Id.* (quoting *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011)). While there must be "some reasonable, calibrated, defensible relationship between the conduct violating dominant public policy and the arbitrator's response," *Philadelphia Housing Authority*, 52 A.3d at 1128, ultimately, "[t]he focus must be on whether the arbitration award, if enforced, would contravene public policy, not whether [a] grievant's misconduct violated public policy," *Blairsville-Saltsburg School District*, 102 A.3d at 1052.

Initially, we address the County's argument that the Arbitration Award is contrary to public policy because it is contrary to the Maharaja Award as it relates to interpretation of the no tolerance policies. As we determined above, the Arbitrator's conclusion that the County did not meet its burden to show a violation of either Policy 207 or 605 renders the Maharaja Award inapplicable. There is no inconsistency in the interpretation of this provision, and the Maharaja Award was inapposite to the current circumstances because the grievant there had violated the no tolerance anti-fraternization policy. Accordingly, the current Arbitration Award does not render the implementation of the Arbitration Award contrary to any public policy encouraging consistency and stability in interpretation of CBA provisions.

The County also asserts that the Arbitration Award violates public policy due to Grievant's actions towards Arrestee. Where an arbitrator's factual findings do not implicate a public policy concern, this Court will not vacate an arbitration award under the public policy exception, as this Court explained in *Blairsville-Saltsburg School District*. The grievant in that case, a school teacher, was terminated by the school district after he was charged for a third time in 15 years with driving under

16

the influence of alcohol. The arbitrator found that the three incidents at issue were remote in time from each other and that the grievant was "living the life of sobriety" and "clearly learned from his mistakes." *Id*. at 1051.

The arbitrator directed the school district to reinstate the grievant, but the trial court vacated the award on the basis that the award did not promote the public policy of protecting children, noting that the grievant had "repeatedly consumed alcohol and made the decision to operate a vehicle." *Id.* This Court reversed, reasoning that the trial court impermissibly examined and reweighed the grievant's conduct. We agreed that there is a well-defined public policy against drinking and driving while under the influence. However, because "the [a]rbitrator found the [g]rievant was a recovered alcoholic," who "no longer drank and drove," but had "successfully attended a rehabilitation center and learned from his mistakes," this Court and the trial court were bound by those facts. *Id.* at 1052. Accordingly, we concluded that the arbitration award that reinstated the grievant to his position in the classroom did not violate public policy. *Id.* at 1053.

Likewise in *City of Bradford* we determined that an arbitration award modifying discipline for a grievant was not contrary to public policy. There, the grievant, a refuse collector, took money that fell out of a purse in an open garbage bag and was discharged by the city for violating various provisions of the city's disciplinary schedule. The arbitrator determined that the record did not support two of the charges against the grievant, but that the grievant did engage in theft. In consideration of mitigating factors and the range of discipline under the disciplinary schedule other than discharge for offenses, the arbitrator mitigated the penalty to a long-term suspension. The trial court denied the city's petition to vacate the award.

17

Before this Court, the city argued that the award violated the well-defined public policy against theft. Applying the three-prong test for the public policy exception, we noted that the nature of the conduct was theft, which implicates a well-defined public policy as set forth in the Crimes Code.[6] *City of Bradford*, 25 A.3d at 414. Nonetheless, we found that the third prong was not met under the circumstances, given the facts found by the arbitrator. We explained that the arbitrator found there were mitigating factors, such as the grievant's prior work history and payment of restitution. Given the arbitrator's findings as to the grievant's actions and mitigating factors, we determined that the arbitration award reducing the termination to a lengthy suspension did "not pose a significant risk of undermining the public policy against theft or the [c]ity's ability to faithfully serve its citizens." *Id.* at 416.

In contrast, where an arbitrator makes findings of fact about a grievant's conduct implicating public policy concerns, we have vacated the award reinstating the grievant, such as in *Neshaminy School District*, 171 A.3d at 343. There, the school teacher grievant was discharged for sexual harassment by creating a hostile work environment and making lewd and suggestive comments to students and coworkers. The arbitrator concluded that the grievant made sexually explicit comments and created a hostile work environment but found that just cause did not exist for discharge and mitigated the discipline to a 20-day suspension. We agreed with the trial court's decision to vacate the award, noting the arbitrator's various factual findings about the continuing nature of the grievant's explicit comments to students and coworkers. *Id.* at 340-41. We reasoned that there was not a reasonable relationship between the grievant's continuous hostile and offensive conduct

---

[6] 18 Pa. C.S. §§ 101-9546.

18

"violating dominant public policy" and the arbitrator's decision to reinstate the grievant to the classroom. *Id.* at 341. Therefore, the Court concluded that the award reinstating the grievant "betray[ed] a lack of appreciation for the dominant public policy" and should be vacated. *Id.* at 341, 343.

Applying the three-prong test and this precedent to the present case, the Arbitration Award does not violate public policy. Regarding the first prong, the nature of the conduct at issue that brought the dispute before the Arbitrator, it was Grievant's alleged use of force in striking Arrestee. However, the Arbitrator concluded that evidence of such use of force was inconclusive.[7]

As to the second prong, whether the conduct implicates a well-defined public policy, as opposed to "general considerations of supposed public interests," *Neshaminy School District*, 171 A.3d at 338, that prong is also satisfied. We agree with the County that there is an important public policy interest in guarding against the mistreatment of incarcerated individuals, including pretrial detainees. *See, e.g.*, *Kingsley v. Hendrick*, 135 S. Ct. 2466, 2473 (2015) (holding "the Due Process Clause protects a pretrial detainee from use of excessive force that amounts to punishment"); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (holding that use of excessive force by prison officials constitutes cruel and unusual punishment in violation of the Eighth Amendment regardless of the officials' intent). This is also established by Policy 207, which requires that only the least amount of force reasonably needed to achieve objectives of safety and compliance is used. (*See* R.R. at 140a-41a.)

---

[7]Although Grievant's conduct in reporting the incident was also at issue before the Arbitrator, the County focuses its public policy argument on the use of force; therefore, we will do the same.

19

However, moving to the third prong, we cannot conclude that the Arbitration Award implicates a public policy concern "given the particular circumstances at hand **and the factual findings of the arbitrator**." *City of Bradford*, 25 A.3d at 414 (emphasis added). We are bound by the Arbitrator's findings of facts and subsequent conclusion that the County did not meet its burden to show that Grievant struck Arrestee. The parties' arguments before this Court focus on their diverging interpretations of the facts and the County's position that its interpretation demonstrates a public policy concern warranting a vacation of the Arbitration Award. However, we are not permitted to review the facts and draw a different conclusion than the Arbitrator on Grievant's conduct. *Blairsville-Saltsburg Sch. Dist.*, 102 A.3d at 1052-53. The Arbitrator found that Arrestee "while being escorted down the hallway by the [G]rievant . . . turn[ed] toward" him, and Grievant, in response, "extended his arms and made contact with [Arrestee]. [Arrestee] fell to the floor but was not injured." (Arbitration Award at 6.) Based on these findings, the Arbitrator determined that the County did not meet its burden to show that Grievant violated the use of force policy. Because the final prong was not met here, as in *City of Bradford*, we must find the Arbitration Award here converting the discharge to a suspension does "not pose a significant risk of undermining the public policy" for protection of inmates, "or the [County's] ability to faithfully serve its citizens." 25 A.3d at 416.

Further, we are mindful that it is not the underlying conduct that we review, but rather whether enforcement of the Arbitration Award will be contrary to public policy. *Blairsville-Saltsburg Sch. Dist.*, 102 A.3d at 1052. As opposed to *Neshaminy School District*, where the arbitrator found extensive facts regarding the grievant's continuing inappropriate conduct but nonetheless reinstated him, the

20

Arbitrator here found that there was not sufficient evidence of a violation of Policy 207 and there was not just cause for discharging Grievant. Additionally, the Arbitrator found mitigating circumstances in the fact that Grievant is a tenured employee and self-reported the incident immediately after it occurred.[8] Accordingly, the Arbitration Award reinstating him is not contrary to public policy.

For the foregoing reasons, the enforcement of the Arbitration Award does not violate the defined public policy of protecting inmates and arrestees from mistreatment or excessive use of force.

## IV. Conclusion

The Arbitration Award derives its essence from the parties' CBA and is not inconsistent with the Maharaja Award. Further, enforcement of the Arbitration Award does not violate a well-defined public policy given the binding findings of fact made by the Arbitrator. Accordingly, we are constrained to affirm common pleas' Order denying the County's Petition to Vacate.

**RENÉE COHN JUBELIRER,** Judge

---

[8] We are mindful that the Arbitrator acknowledged Grievant's two prior misconducts involving use of force. The Arbitrator noted this but did not appear to find it an aggravating circumstance that warranted discharging Grievant, and we cannot reweigh that determination.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,                  :
Pennsylvania,                         :
                Appellant    :
                             :
           v.           :   No. 1742 C.D. 2018
                             :
Allegheny County Prison Employees     :
Independent Union                     :

# O R D E R

NOW, November 7, 2019, the Order of the Court of Common Pleas of Allegheny County dated December 4, 2018, is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge